Jonathan TASINI, Mary Kay Blakely, Barbara Garson, Margot Mifflin, Sonia Jaffe Robbins, and David S. Whitford, Plaintiffs,

v.

The NEW YORK TIMES CO., Newsday Inc., Time Inc., The Atlantic Monthly Co., Mead Data Central Corp., and University Microfilms Inc., Defendants.

No. 93 Civ. 8678(SS).

United States District Court, S.D. New York.

Oct. 29, 1997.

---

Emily M. Bass, Burstein & Bass, New York City, for Plaintiffs.

Bruce P. Keller, Lorin L. Reisner, Thomas H. Prochnow, Debevoise & Plimpton, New York City, for Defendants.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

On August 13, 1997, this Court issued an Opinion and Order dismissing plaintiffs' Complaint, and rejecting the contention that the defendant publishers and electronic service providers had committed copyright infringement by making plaintiffs' freelance articles available in various electronic formats. *Tasini v. New York Times Co.*, 972 F.Supp. 804, 807–08 (S.D.N.Y.1997). As the basis for its ruling, the Court applied Section 201(c) of the Copyright Act and determined that defendants had properly republished plaintiffs' individual freelance articles as part of electronic "revisions" of the newspapers and periodicals in which those articles first appeared. 17 U.S.C. § 201(c).

On September 3, 1997, plaintiffs filed a motion for reconsideration, raising a number of objections to the Court's approach in its Opinion and Order. First, plaintiffs argue that the Court should have ruled for Whitford, one of the complaining freelance authors, upon rejecting Time Inc.'s claim that it had acquired electronic rights in one of Whitford's articles pursuant to contract. Second, plaintiffs argue that, even accepting the Court's interpretation of Section 201(c), there is a disputed question of fact as to whether any of the electronic technologies involved in this case qualify as permissible revisions. Finally, plaintiffs contend that the Court mistakenly accepted defendants' representations that plaintiffs had failed to raise an infringement claim relating to certain article abstracts created in connection with one of the disputed technologies, "General Periodicals OnDisc."

For the reasons discussed below, the Court rejects plaintiffs' motion, and declines to reverse any portion of its earlier decision.[1]

## DISCUSSION

1. Plaintiff Whitford's Contract Claim

In its August 13 Opinion, the Court rejected defendant Time Inc.'s claim that it had

---

1. In its August 13 Opinion and Order, the Court set out a detailed explanation of the facts and allegations pertinent to this dispute. *Tasini*, 972 F.Supp. at 804–09. Familiarity with those facts is presumed.

acquired, by contract, electronic rights in an article written by plaintiff Whitford and first published in the hard copy version of Sports Illustrated. In support of its argument, Time Inc. had invoked a provision of its written agreement with Whitford pursuant to which the publisher acquired "the exclusive right first to publish the Story in the Magazine." *Tasini*, 972 F.Supp. at 807. Determining that the right of "first" publication could not reasonably be stretched into the right to be the first to publish a particular work in any and all mediums, the Court held that the disputed provision did not authorize Time Inc. to make Whitford's article available on NEXIS some 45 days following its initial hard copy publication.

Having found that Time Inc. failed to acquire electronic rights in Whitford's article pursuant to its selected contract provision, the Court considered whether Time Inc.—along with those defendants who had not entered into enforceable contracts concerning rights in the disputed articles—had nevertheless obtained those rights by statute. Ultimately, the Court determined that they had. All of the defendants had acted within the scope of their "privileges," under Section 201(c) of the Copyright Act of 1976, by creating electronic "revisions" of their collective works.[2]

In their present motion, plaintiffs argue that the Court should have held in Whitford's favor directly upon rejecting Time Inc.'s contract claim. The Section 201(c) privileges, plaintiffs contend, "appl[y] only '[i]n the absence of an express transfer of the copyright or of any rights under it . . .'" (Memo Recon. at 2 (quoting Section 201(c)).) Because there was an express transfer between Whitford and Time, Inc.—and because defendants failed to show that this transfer reaches NEXIS—plaintiffs contend the Section 201(c) privileges simply do not apply in favor of Time Inc. Thus, plaintiffs insist that the

Court should have extended the specified statutory privileges only to the remaining defendants, none of whom had entered into any binding agreements concerning rights in the disputed articles.

### A. The Court's Contract Holding

■ Plaintiffs' argument has considerable appeal, but it depends upon a misstatement of the Court's August 13 ruling. The Court did not, as plaintiffs suppose, find that "Whitford did not expressly transfer electronic rights in his article." (Memo. Recon. at 4.) Rather, the Court found that the particular contract provision invoked by Time Inc.—the provision extending "first" publication rights to the publisher—did not authorize the electronic republication of Whitford's article. Because only Time Inc. invoked its contract with Whitford, and because Time Inc. invoked only this provision, the Court was not in a position to announce any broader conclusion concerning the extent to which the remainder of the agreement did or did not reach questions of electronic republication.

■ The Court noted, however, in its August 13 Opinion, that at least two provisions in the contract between Time Inc. and Whitford potentially encompass rights extending as far as NEXIS. *Tasini*, 972 F.Supp. at 811 n. 4. One provision, in particular, grants Time Inc. the following right in Whitford's article:

(c) the right to republish the Story or any portions thereof *in or in connection with the Magazine* or in other publications published by Time Inc. Magazine Company, its parents, subsidiaries or affiliates, provided that you shall be paid the then prevailing rates of the publication in which the Story is republished.

*Tasini*, 972 F.Supp. at 807 (emphasis added). This provision, with its broad "in connection with" language, appears explicitly to autho-

---

**2.** Section 201(c), which the Court analyzed at length in its August 13 Opinion, provides as follows:

Copyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole, and vests initially in the author of the contribution. In the absence of an express transfer of the copyright

or of any rights under it, the owner of copyright in the collective work is presumed to have acquired only the privilege of reproducing and distributing the contribution as part of that particular collective work, any revision of that collective work, and any later collective work in the same series.

17 U.S.C. § 201(c).

rize the republication of Whitford's article as part of a revised version of defendant's magazine, as appears on NEXIS, provided that Whitford is paid at "prevailing rates." Recognizing this possibility, the Court deemed it significant that plaintiffs neither raised a breach of contract claim in their complaint or in their briefs before the Court, nor presented any persuasive explanation as to why the provision did not—despite its seeming breadth—govern Time Inc.'s republication on NEXIS.[3] *Tasini,* 972 F.Supp. at 811 n. 4. The Court was thereby left in the unusual position of dealing with a situation likely governed by contract, while dealing with a plaintiff to press a claim only of infringement.

By taking the unconvincing all or nothing stance that its contract with Time Inc. in no way implicated electronic rights, and by declining to press a breach of contract claim, Whitford framed its arguments in such a way that the Court could not make any conclusive determination as to whether Time Inc. had in fact exceeded the full extent of its rights under the contract. The Court was able only to determine that Time Inc. had gone beyond the isolated "first" publication right that it had invoked. Because of the remaining contract questions left unresolved by the parties' presentations, the Court resorted to the Section 201(c) presumption extending certain limited privileges to publishers.

### B. The Presumed Privileges

■ The Court did not, as plaintiffs argue, act inconsistently with the language of Section 201(c) by applying the presumed privileges despite the existence of a contract between the parties. Just as it is a publisher's burden to demonstrate that it has acquired rights greater than the presumed privileges,

it is an author's burden to demonstrate that any agreement between the parties limits a publisher to fewer than those privileges. *Cf. Bartsch,* 391 F.2d 150 (where contract language is broad enough to cover different technological uses, "the burden of framing and negotiating an exception should fall on the grantor"); *Bourne v. Walt Disney Co.,* 68 F.3d at 631 (placing burden on copyright holders to demonstrate that particular use of protected work is unauthorized under existing contract). In light of the deficiencies in its contract presentation, this is a burden that plaintiffs failed to meet.

■ Whitford seeks to avoid any responsibility for invoking his contract with Time Inc. by taking the position that, where a contract is in place between the parties, the Section 201(c) privileges do not apply, and it becomes the publisher's burden to demonstrate that its actions are authorized under the agreement. (Memo. Recon. at 2.) Contrary to plaintiffs' reading, however, Section 201(c) does not provide that the specified privileges apply "only" in the absence of an express transfer of rights. More precisely, the provision indicates that, in the absence of an express transfer of rights, publishers are presumed to acquire "only" the delineated privileges. 17 U.S.C. § 201(c). Though subtle, this difference is significant.

Instead of using the term "only" to limit those circumstances in which the specified privileges apply, Section 201(c) uses the term "only" to suggest that the specified privileges represent a floor—*i.e.,* a minimum level of protection which, if unenhanced by express agreement, publishers are generally presumed to possess. In other words, it is implicit in the language of section 201(c)— and explicit in the House Report accompany-

---

**3.** Whitford argued only indirectly that NEXIS dissembles Sports Illustrated to such an extent that it can not even be said that articles are placed online "in connection" with the magazine. This is unconvincing. By placing all of the articles appearing in each issue of Sports Illustrated online, and by identifying each of those articles by the Sports Illustrated issue in which they appeared, NEXIS plainly republishes articles, like Whitford's, "in connection" with the magazine. In any event, if there is some persuasive evidence that the provision does not apply in such circumstances, Whitford never brought it to

the Court's attention. *Cf. Bartsch v. Metro-Goldwyn–Mayer, Inc.,* 391 F.2d 150, 155 (2d Cir.) (holding that where contract language is broad enough to cover different technological uses, "the burden of framing and negotiating an exception should fall on the grantor."), *cert. denied,* 393 U.S. 826, 89 S.Ct. 86, 21 L.Ed.2d 96 (1968); *Bourne v. Walt Disney Co.,* 68 F.3d 621, 631 (2d Cir.1995) ("in cases where only the scope of the license is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized."), *cert. denied,* — U.S. —, 116 S.Ct. 1890, 135 L.Ed.2d 184 (1996).

ing that provision—that in the absence of an express transfer of "more," a publisher is presumed to acquire, at a minimum (*i.e.,* "only"), the delineated privileges. H.R. Report No. 94–1476, at 122 (1976). Indeed, Congress viewed this minimum level of protection for the creators of collective works as an "essential counterpart" to the larger presumption favoring the authors of individual contributions. *Id.* Thus, because Time Inc. failed to demonstrate that it had obtained rights exceeding the Section 201(c) privileges (*i.e.,* "more"), the Court limited Time Inc. to "only" those "essential" privileges.[4]

■ The Section 201(c) privileges, as already emphasized, are not framed as an absolute base line, but as a "presumed" baseline. 17 U.S.C. § 201(c). Where a publisher seeks more protection than these privileges provide, the burden is on that publisher to demonstrate that it has acquired the desired rights. Conversely, where a writer attempts to deny a publisher certain of the Section 201(c) privileges, as Whitford does, that writer must defeat the statutory presumption by demonstrating an express transfer reflecting the desired limitations. By failing to explain how—despite a seemingly pertinent contract provision—Time Inc. failed to acquire electronic rights under contract, and by failing in the alternative to allege a breach of that provision, Whitford did not make this required showing. Thus, the Court was left with an insufficient basis either to conclude that Time Inc. had exceeded its rights under the contract, or to hold that Time Inc. had breached that contract. The Court therefore evaluated Whitford's copyright claim pursuant to the Section 201(c) presumptions.

In sum, because both parties failed to displace the Section 201(c) presumption by which publishers are granted certain limited privileges in connection with the individual contributions appearing in their collective works, the Court extended those statutory privileges—and "only" those privileges—to Time Inc.

### C. Defendants' Request For Reconsideration

As part of their opposition to plaintiffs' motion, defendants themselves ask the Court to reconsider its determination that first publication rights do not reach NEXIS. According to defendants, nothing could be "more basic" than that the right "first to publish" in a particular "magazine" in no way "circumscribe[s]" a publisher's right to reissue that article in future publications of that same magazine, even in different formats. (Opp. at 8 n. 5, 9 n. 6.) There are at least two problems with this formulation which defendants deem so elementary.

■ First, the Court has never accepted defendants' characterization that NEXIS carries the same "magazine" in which Whitford's article initially was published; NEXIS, which strips away many of the elements present in the publishers' hard copy periodicals, carries a revised version of that magazine. While this satisfies the "any revision" language of Section 201(c), the contract provision upon which Time Inc. relies includes no similar language. Thus, there is no basis for interpreting Time Inc.'s "first" publication right to encompass the right first to publish Whitford's article in its hard copy

---

4. The Court recognizes that the circumstances of this case reveal a gap in the language of Section 201(c). By implying that an "express transfer of ... rights" would necessarily leave a publisher with "more" than the statutory privileges, Congress seemingly assumed that any single "right" necessarily encompasses all of the specified "privileges." H.R. Report No. 94–1476, at 122 (1976). Even under plaintiffs' narrow reading of the term "privilege," however, it is possible for an express transfer of rights—such as a transfer of "one time" publication rights, or, as here, "first" publication rights—to leave a publisher with less protection than it would otherwise possess under Section 201(c). By failing to take this into account, Section 201(c) speaks directly only

to those situations in which there is either no express transfer—in which case the privileges apply—or an express transfer clearly broad enough to displace the presumption limiting a publisher to "only" the specified privileges. The provision is less direct in dealing with those instances, like the present, in which a contract potentially alters the statutory base line, perhaps even in an author's favor, but neither party has invoked or adequately explained the pertinent contract language. For the reasons explained, the Court finds that, in such a situation, the Section 201(c) presumption applies, leaving a publisher with the specified privileges, and "only" those privileges.

magazine and then again—a considerable time later—in a revised electronic version of that magazine.

Second, in defendants' initial motion, Time Inc. invoked its "first" publication right as the source of its authority to place Whitford's article on NEXIS, but defendant now suggests only that this contract provision in no way "circumscribe[s]" the publisher's existing electronic rights. (Opp. at 8 n. 5.) In other words, defendants tacitly accept that Time Inc.'s right to republish Whitford's article on NEXIS originates from some source other than the cited contract provision. In particular, this authority necessarily derives either from one of the contract provisions that neither party invoked, or from the "privilege" language of Section 201(c) as applied by this Court in its August 13 Opinion.

In sum, in light of the arguments advanced by the parties, the Court properly determined, in its August 13 Opinion, that Time Inc.'s "first" publication rights do not reach NEXIS, and that the Section 201(c) privileges nevertheless apply in favor of Time Inc.

## II. Section 201(c) As Applied To The Undisputed Facts

In reaching its determination that the disputed technologies carry permissible "revisions" under Section 201(c), the Court rejected numerous arguments advanced by the plaintiffs, all of which were offered in support of two basic conclusions: (i) plaintiffs argued that a revision cannot exist in a medium different from the work that preceded it, and (ii) plaintiffs argued that even if an electronic revision of a hard copy periodical is a theoretical possibility, the particular systems involved in this litigation are incapable of preserving enough of a collective work to generate such a revision.

For purposes of this motion for reconsideration, plaintiffs do not refute the Court's conclusion that it is at least possible to reproduce or revise a collective work within a medium different than the one in which that work initially appeared.[5] Instead, plaintiffs argue that the Court improperly resolved a factual dispute by determining that the technologies at issue in this case actually succeed at preserving plaintiffs' articles as a part of revised versions of the particular collective works in which those articles first appeared.

### A. The Court's Analysis Under Section 201(c)

As a first step in determining whether a recognizable version (*i.e.*, "any revision") of each of the publisher defendants' periodicals is preserved electronically, the Court sought to identify—within the context of a media neutral statute—the defining characteristics of a collective work. *Tasini*, 972 F.Supp. at 822–26. Because collective works are a species of compilation, the Court consulted those cases involving copyright infringement claims brought by the creators of other types of compilations, typically factual compilations. *Id.* The Supreme Court has determined, in such cases, that compilations are protected original creations only to the extent that they evince an original selection or arrangement of materials. *See Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 349, 111 S.Ct. 1282, 1289–90, 113 L.Ed.2d 358 (1991). In other words, a compilation—and thus a collective work—gets its unique character not from its individual parts, but from the original manner in which those parts are combined into a collective whole.

Having determined that a distinguishing characteristic of any collective work is its original selection of materials, the Court set out to identify this defining attribute of the disputed periodicals. *Tasini*, 972 F.Supp. at 824–25. In a conclusion that plaintiffs do not contest, the Court found that each publisher's selection of articles for inclusion in their collective works reveals significant originality and editorial discretion. *Id.* Drawing upon its earlier conclusion that the broad "any revision" language of Section

---

5. In reaching this conclusion, the Court detected nothing in the language or history of Section 201(c) supporting the sort of media restriction favored by plaintiffs. *Tasini*, 972 F.Supp. at 816–21. The Court further reasoned that any such limitation would be inconsistent with the forward looking and media neutral approach characterizing the Copyright Act generally. *Id.* Finally, the Court noted that plaintiffs themselves struggled with the copyright status of microfilm, a nonprint photographic reproduction of newspapers and other periodicals. *Id.* at 816 n. 7.

201(c) permits even major revisions, the Court reasoned that this original article selection, if preserved in a subsequent creation, would render that creation at least a recognizable version of the hard copy periodical that preceded it.

In some of the same compilation infringement cases that the Court had already consulted, it had been established that, in order to preserve an original selection of materials, a subsequent creation must incorporate that selection nearly in full. *See, e.g., Kregos v. Associated Press,* 937 F.2d 700, 710 (2d Cir. 1991) (deeming it unlikely that defendant infringed plaintiff's form of baseball pitching statistics by devising a competing form including only 6 of the 9 categories of statistics identified by plaintiff); *cf. Beaudin v. Ben & Jerry's Homemade, Inc.,* 95 F.3d 1, 2 (2d Cir.1996) ("Where the quantum of originality is slight and the resulting copyright 'thin'" —as in the case of a compilation— "infringement will be established only by very close copying ..."). Importing this principle into the Section 201(c) context, the Court found it significant that the electronic systems carry the publisher defendants' complete selection of articles, and that—once selected for review—those articles are identified according to the periodicals in which they originally appeared. Indeed, largely because it was undisputed that a defining original characteristic of the publisher defendants' periodicals is fully preserved both online and on disc, the Court held that the electronic systems are home to revised versions of the publisher defendants' collective works.[6] *Tasini,* 972 F.Supp. at 825–26.

After finding that the NEXIS and the CD–ROM technologies qualified as revised versions of their hard copy predecessors, the Court noted the extent to which certain terms of art employed in the compilation infringement context lend further credence to its conclusions. Specifically, the Court contrasted the "substantial similarity" test employed in compilation infringement cases with the broad "any revision" language of Section 201(c). It would present something of an anomaly, the Court reasoned, if a work could be deemed 'substantially similar' to a particular collective work for some copyright purposes without at least qualifying as "any revision" of that same collective work for other purposes under the Act. *Tasini,* 972 F.Supp. at 826–27. The Court accepted this possibility, however, and emphasized that the electronic systems are substantially similar to their hard copy counterparts, not merely as a technical matter, but in such a way as to preserve the "basic character" of those periodicals.

Finally, the Court acknowledged that its specific holding probably was not contemplated by the framers of Section 201(c). Nevertheless, in enacting a media neutral statute employing a broad "any revision" standard, Congress left open the possibility that publishers might ultimately garner—as they now do—tremendous profits from then nascent technologies. Addressing the possibility that modern developments have thereby undercut the original Congressional purpose of protecting authors, this Court simply did not consider it an appropriate judicial function to rework the language or structure of Section 201(c). *See Tasini,* 972 F.Supp. at 827.

## B. Plaintiffs' Alleged Factual Dispute

Purporting to accept the Court's legal framework, at least for purposes of their present motion, plaintiffs contend that there is a disputed question as to whether the electronic reproductions are in fact substantially similar to the defendants' hard copy publications. In support of their argument, plaintiffs identify a litany of ways in which the electronic services are visually unlike their hard copy counterparts. Most notably, and except for General Periodicals OnDisc, those services do not display the photographs, columns and page layout of the hard

---

**6.** The Court's holding did not follow automatically from the fact that the electronic systems preserve a significant original aspect of their hard copy counterparts, but was based also upon the Court's observation that each of the electronic systems could fairly be analogized to a library in which complete issues of hard copy periodicals are made available to researchers interested in locating particular articles of interest. In other words, the electronic systems do not destroy the publishers' collective works; those systems make revisions of those works available—for traditional purposes—in new and advanced ways. *Tasini,* 972 F.Supp. at 827.

copy newspapers and periodicals. Moreover, as plaintiffs emphasize, the electronic services contain millions of articles, almost countless more than any particular issue of any one of the disputed publications.

 Aside from reiterating matters squarely addressed by the Court in its August 13 Opinion, *Tasini,* 972 F.Supp. at 825–27, plaintiffs' reformulated argument—tied to the Court's discussion of "substantial similarity"—quite simply misses the point. In the case of a collective work, a substantial similarity exists where either an original selection or an original arrangement is copied into a subsequent work. *See, e.g., Key Publications, Inc. v. Chinatown Today Publishing Enterprises, Inc.,* 945 F.2d 509, 514 (2d Cir. 1991) ("If the Galore directory is substantially similar to the 1989–90 Key directory with regard to that arrangement of categories or that selection of businesses, then a finding of infringement can be supported."). Moreover, where it is apparent that an entire original selection of materials has been copied into a subsequent work, that work shares a substantial similarity with the work that preceded it, even if the subsequent work includes numerous additional materials, as well. *See CCC Information Services, Inc. v. Maclean Hunter Market Reports, Inc.,* 44 F.3d 61 (2d Cir.1994) (holding that computer data base provider infringed plaintiffs copyright in book of used car valuations by including same selection of vehicles and same price estimates into larger online system), *cert. denied,* —— U.S. ——, 116 S.Ct. 72, 133 L.Ed.2d 32 (1995); *cf. Harper & Row Publishers v. Nation Enterprises,* 471 U.S. 539, 565, 105 S.Ct. 2218, 2233, 85 L.Ed.2d 588 (1985) (" 'no plagiarist can excuse the wrong by showing how much of his work he did not pirate.' ") (quoting *Sheldon v. Metro–*

*Goldwyn Pictures Corp.,* 81 F.2d 49, 56 (2d Cir.1936)). Thus, where it can be established that an original selection of materials has in fact been copied into another work, it is appropriate for a court considering a motion for summary judgment to determine—as a matter of law—that a substantial similarity exists.[7] *See, e.g., Lipton v. Nature Co.,* 71 F.3d 464 (2d Cir.1995); *cf. Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir .1992) (explaining that, where it is clear that an original element of one work has been copied into another, it is appropriate for a court to determine, at summary judgment, that a substantial similarity exists between the two).

 In this case, there can be no dispute, and has been no dispute, with respect to two critical facts. First, the selection of articles included in each of the disputed periodicals constitutes an original and defining characteristic of those periodicals. Second, all of the articles printed in each issue of the disputed hard copy periodicals are made available electronically and, once online or on disc, those articles are displayed with headers identifying the hard copy periodicals in which they originally appeared. (Pl.s' Memo. Supp. Mot. Summ. J. at 21 ("each display . . . contains not only the text of the articles or stories that have been copied, but also . . . the title of the article, the author's name, the origin of the article (publication and date) . . .").) On the basis of these undisputed facts, and as other courts have done in the analogous circumstances of compilation infringement cases, this Court was able to determine—as a matter of law—the extent of the similarity between the different works before it.

By listing the numerous ways in which the electronic reproductions are different from

---

**7.** By invoking the "ordinary observer" test commonly employed in infringement cases, plaintiffs ignore the unique considerations operating upon that standard as it applies in the compilation context. In many circumstances, a finding of substantial similarity depends upon whether an ordinary observer would consider two works to have a common aesthetic appeal. *See Knitwaves, Inc. v. Lollytogs Ltd.,* 71 F.3d 996, 1002 (2d Cir.1995). In the case of a compilation, however, this test looks more narrowly to whether "the protectible elements, standing alone, are substantially similar." *Id.* Thus, where an entire origi-

nal selection of materials is copied, even into a work that plainly would not be mistaken for its predecessor, a finding of substantial similarity is appropriate. In *Lipton,* for instance, the Second Circuit detected a substantial similarity between plaintiff's book of terminology and a scarf adorned with "essentially the same" terms selected by plaintiff for inclusion in his compilation. *Lipton,* 71 F.3d 464, 471. In *CCC,* as here, the Court identified a substantial similarity between a computer data base and a hard copy publication. 44 F.3d 61.

the paper periodicals, and by suggesting that a jury might therefore have found an absence of any substantial similarity, plaintiffs attempt to turn the Court's legal analysis on its head. As explained at length in the August 13 Opinion, a revision is identified on the basis of what it retains of a prior work and not on the basis of what it loses. *Tasini*, 972 F.Supp. at 825–27. This grows out of the fact that the "any revision" language of Section 201(c) contemplates even major revisions to a collective work. A major revision, by its very nature, will be different in substantial ways from the work that preceded it. So long as a work retains a significant defining characteristic of an earlier work, however, it remains a recognizable version of that work. This is generally enough to qualify a work as "any revision" of a particular collective work for purposes of Section 201(c), and it is enough also to qualify two works as substantially similar for other purposes at copyright law. Thus, because there is no factual dispute as to whether the disputed technologies preserve the complete original selection of articles included in the publisher defendants' periodicals, the Court had ample factual basis—within the legal framework that it employed—to hold in defendants' favor.

Finally, it is worth reiterating that the Court did not, strictly speaking, hold for defendants under Section 201(c) based solely upon its determination that a substantial similarity exists between the hard copy periodicals and their electronic counterparts. It is true that much of the Court's analysis was informed by the compilation infringement cases, which necessarily implicate questions of substantial similarity. More important for the Court's purposes, however, those decisions provide guidance in identifying the distinguishing original characteristics of any particular collective work, an inquiry necessarily critical whenever it is a court's task to compare such a work with a subsequent creation. Having made this inquiry, this Court was able to determine, as a matter of law, that the disputed systems store revised versions of the publisher defendants' hard copy periodicals.

### III. "General Periodicals OnDisc" Abstracts

Plaintiffs finally argue that they had objected that the article abstracts provided as a part of "General Periodicals OnDisc" themselves constitute unauthorized derivative versions of their articles, and that—in a footnote—the Court mistakenly accepted defendants' representation that the issue had never been raised. *Tasini*, 972 F.Supp. at 821 n. 12 (declining to consider "whether the abstracts infringe plaintiffs' copyrights in their individual articles."). This reflects both a misunderstanding as to exactly which issues the Court .declined to consider, and a mischaracterization as to exactly which issues plaintiffs had advanced.

Plaintiffs' basic position throughout this litigation has been that the electronic defendants dissemble the publishers' collective works in order to obtain value in plaintiffs' individual articles. This argument had its greatest force in connection with NEXIS and "The New York Times OnDisc," both of which are text based systems which store and display articles individually. Plaintiffs had a considerably more difficult time advancing their position in connection with "General Periodicals OnDisc," an image based system which photographically reproduces complete sections of The New York Times. Indeed, plaintiffs struggled to find some way in which to distinguish this system from microfilm, a photographic reproduction which plaintiffs could not readily deem impermissible under Section 201(c). (Mot. Recon. at 15–16.) It is in connection with this effort that plaintiffs invoked the article abstracts.

As they recount in their present motion, plaintiffs argued that the article abstracts render General Periodicals OnDisc a "marriage between two data bases." (Memo. Supp. Recon. at 13, 16.) ·More particularly, plaintiffs reasoned that General Periodicals OnDisc is not a pure image based system, but a hybrid system including a text based component. *Id.* This text based component, plaintiffs argued, operates to dismantle the publishers' collective works by permitting users to identify and to access individual articles appearing within the system. In short, plaintiffs maintained that the abstracts

render General Periodicals OnDisc more akin to NEXIS and The New York Times OnDisc than to microfilm. (Memo. Supp. Recon. at 18.)

Because the Court found that even NEXIS and The New York Times OnDisc qualify as a permissible revisions, plaintiffs' efforts at finding a text based component to General Periodicals OnDisc amounted to an exercise in futility. Whether conceived as a text based or image based or hybrid system, General Periodicals OnDisc—like NEXIS and The New York Times OnDisc—preserves enough of each disputed periodical (i.e., the publisher defendants' original selection of articles) to qualify under the "any revision" language of Section 201(c). In whatever way plaintiffs' articles are accessed and displayed, they are preserved within the disputed systems as part of revised versions of the periodicals in which they initially appeared. Having reached this conclusion, the Court did not overlook plaintiffs' argument that General Periodicals OnDisc is not a true image based system; the Court simply considered that argument inconsequential.

In expressly declining to address the possibility that the individual article abstracts infringed plaintiffs' rights in their articles, the Court was responding to a concern unrelated to the "part-text/part-image based" argument that plaintiffs had actually raised in their pleadings. This concern grew out of the Court's determination that Section 201(c) broadly permits revisions of collective works but only narrowly allows for reproductions of individual articles. *Tasini,* 972 F.Supp. at 820. In light of this, the Court raised the possibility that the article abstracts—depending upon their content—might constitute unauthorized derivative versions of each article, instead of something akin to a simple index useful for retrieving the full text of those articles from within the system. It is this narrow concern—a concern which plaintiffs never raised—which the Court declined to consider in its August 13 Opinion. Moreover, plaintiffs never presented the Court with excerpts from the potentially infringing abstracts. Even if it had been their intention to argue that those abstracts constitute unauthorized derivative versions of the corre-

sponding articles, plaintiffs thereby failed to make out a *prima facie* case of infringement. *See Eckes v. Card Prices Update,* 736 F.2d 859, 861 (2d Cir.1984) (explaining that it is the burden of any plaintiff claiming copyright infringement to prove that an allegedly infringing work copies protected elements of the copyright holder's protected work).

### CONCLUSION

For the reasons set forth above, plaintiffs motion for reconsideration is DENIED.

**SO ORDERED.**