**Neil H. ACKERMAN, Trustee of the Bankruptcy Estate of Diane Benincasa, Plaintiff,**

v.

**NATIONAL FINANCIAL SYSTEMS, Robert C. Barbarello and Robert Hernandez, Defendants.**

**No. 96 CV 1457(ADS).**

United States District Court, E.D. New York.

Jan. 31, 2000.

Palmeri & Gaven, New York City (John J. Palmeri, of counsel), for plaintiff.

Kauff, McClain & McGuire, New York City (Dennis A. Lalli, of counsel), for defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff, Diana Benincasa ("Benincasa" or the "plaintiff") commenced this action against her former employer, National Financial Systems, Inc. ("NFS"), Robert Barbarello ("Barbarello") the owner of NFS, and Robert Hernandez ("Hernandez") a supervisor and now part-owner of NFS (collectively, the "defendants") on October 4, 1995 by filing a complaint in the Supreme Court of the State of New York, Nassau County, alleging two causes of action against each of the defendants. The first cause of action alleges that the defendants sexually harassed Benincasa under the New York Human Rights ("HRL"), New York State Executive Law § 290 *et seq.*. The second cause of action is based on the New York common law tort of assault and battery. On November 24, 1995, the case was removed to this Court pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 1452 as the plaintiff is in personal bankruptcy and the matter is being prosecuted by the trustee in bankruptcy.

Presently before the Court is the defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") seeking dismissal of all of the plaintiff's claims

except for the sexual harassment and assault and battery claims asserted against the defendant Hernandez.

## I. BACKGROUND

The following factual allegations are taken from the plaintiff's complaint and the Local Civil Rule 56.1 statements filed by the parties. NFS is in the bill-collecting business. Its clients are credit card issuers and retail merchants whose customers have failed to pay their bills. NFS hires collectors, who contact the delinquent account-holders of its clients, primarily by telephone, and attempt to persuade them to pay their bills. Barbarello is the major stock holder in NFS, a director of NFS and a corporate officer of NFS. Hernandez is a stockholder, officer and director and officer of NFS. From April 1986 through December 1994, Benincasa was employed by NFS. Originally, Benincasa was a "Collector," after which she was promoted to the position of "Unit Leader." Thereafter, she was again promoted to the position of "Trainer/Auditor." Occasionally, Benincasa filled-in as a "Unit Manager."

The complaint alleges that in May 1992 through early 1993, Barbarello sexually harassed the plaintiff by attempting to be overly friendly toward her; by sending her cards; by sending her a toy; by taking her on a meaningless trip to Pennsylvania; by making suggestions of a more intimate relationship; and by constantly being around her.

The plaintiff also accuses Hernandez of sexual harassment. According to the plaintiff, Hernandez commenced his sexual harassment in 1993 and forced her to resign in 1994 due to intolerable conditions in the working environment. Hernandez is alleged to have hugged the plaintiff; pulled on her bra strap; punched her; rubbed up against her breasts; put his hand between her legs; offered her money for sex or to see her breasts; made lewd and profane remarks such as "suck my dick," "eat me," "let's do it," "do you trim your pussy."

As previously stated, as a result of this alleged conduct, the plaintiff has asserted two causes of action against all three defendants. The first cause of action asserts that the defendants violated the HRL by sexually harassing her and creating a hostile work environment. The second cause of action asserts claims of assault and battery against the defendants.

The defendants move for summary judgment as to all claims except for the sexual harassment and the assault and battery claims against defendant Hernandez. The defendants contentions are as follows: (1) the assault and battery claim against the defendant Barbarello is barred by the one year statute of limitations; (2) the assault and battery claim against NFS that are based on acts ascribed to defendant Hernandez must be dismissed as there is no basis for imputing *respondeat superior* liability to the corporate employer. In addition, the defendant asserts that common law tort claims against NFS arising from the conduct of Hernandez are barred by the exclusive remedy provisions of the Workers' Compensation Law; (3) defendant Barbarello's conduct does not amount to sexual harassment because Benincasa was not subjectively offended; (4) NFS cannot be held vicariously liable for the sexual harassment ascribed to Hernandez because it never encouraged, condoned or approved of the conduct. In addition, NFS has met its duty of care to prevent sexual harassment by promulgating a sexual harassment policy and Benincasa unreasonably failed to take advantage of the remedial opportunities it presented; and (5) Benincasa has failed to mitigate her damages.

The plaintiff consented to the dismissal of its claim of assault and battery against the defendant Barbarello. In addition, the plaintiff consented to dismissal of its claim of assault and battery against NFS based on the acts of defendant Hernandez. Therefore, the discussion in this opinion is limited to whether (1) Barbarello's conduct

amounts to sexual harassment; (2) NFS can be held vicariously liable for the conduct attributable to Hernandez; and (3) Benincasa has failed to mitigate her damages. It should be noted at the outset that because New York courts require the same standard of proof for claims brought under the HRL as those brought under Title VII, the Court will analyze these issues under the recent Supreme Court and Second Circuit decisions analyzing claims of sexual harassment in the context of Title VII. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 n. 4 (2d Cir.1995).

## II. DISCUSSION

### A. *Summary Judgment Standard*

A court may grant summary judgment "only if the pleadings and evidentiary submissions demonstrate the absence of any genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Tasini v. New York Times Co.,* 192 F.3d 356, 360 (2d Cir.1999); *see also Hunt v. Cromartie,* 526 U.S. 541, 119 S.Ct. 1545, 1550, 143 L.Ed.2d 731 (1999) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 [1986]; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 [1986] ); *Turner v. General Motors Acceptance Corp.,* 180 F.3d 451, 453 [2d Cir.1999]; Fed.R.Civ.P. 56[c]. In this determination, the Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Tasini,* 192 F.3d at 360.

According to the Second Circuit, "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant

must come forward with specific facts showing that a genuine issue for trial exists. *Fagan v. New York State Elec. & Gas Corp.,* 186 F.3d 127, 132 (2d Cir.1999); *West–Fair Elec. Contractors v. Aetna Cas. & Sur. Co.,* 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56[e] ). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505.

However, mere conclusory allegations, speculation, or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York,* 88 F.3d 63, 70 (2d Cir.1996). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 129 (2d Cir.1996), *cert. denied,* 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991); *Grain Traders, Inc. v. Citibank, N.A.,* 160 F.3d 97, 100 (2d Cir.1998). Finally, the Court is charged with the function of "issue finding," not "issue resolution." *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir.1994).

It is within this framework that the Court addresses the present motion for summary judgment.

### B. *Does Barbarello's Alleged Conduct Amount to Sexual Harassment?*

In *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court stated that a claim for sexual harassment is established "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 370 (citations and internal

quotation marks omitted). The Supreme Court added that:

> mere utterance of an epithet which engenders offensive feelings in a employee does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Id.* at 21–22, 114 S.Ct. 367.

More recently, the Second Circuit described the criteria for adequately pleading a claim of a hostile working environment as follows:

> In order to survive summary judgment on a claim of hostile work environment harassment, a plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment. Isolated instances of harassment ordinarily do not rise to this level. Rather, the plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment. Determining whether workplace harassment was severe or pervasive enough to be actionable depends on the totality of the circumstances. Because the crucial inquiry focuses on the nature of the workplace environment as a whole, a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim.

*Cruz v. Coach Stores*, 202 F.3d 560 (2nd Cir.2000), New York Law Journal, January 26, 2000. (citations and quotations omitted). In *Cruz*, the Second Circuit reversed the district court's dismissal of the plaintiff's claim of sexual harassment based on a supervisor's conduct which consisted of "repeated remarks to the effect that women should be barefoot and pregnant," *id.;* standing very close to women when talking to them and looking them up and down; and cornering women against the wall while talking to them. The Second Circuit concluded that "the physically threatening nature of Bloom's behavior ... brings this case over the line separating merely offensive or boorish conduct from actionable sexual harassment. [ ] Drawing inferences in favor of the plaintiff, a reasonable jury could conclude that Bloom physically harassed Cruz regularly throughout her tenure at Coach in a manner that was hostile to her because of her sex." *Id.*

The defendants argue that the conduct ascribed to Barbarello is not actionable because Benincasa never perceived it as offensive. In support of this claim, the defendants submit that Benincasa admitted that she never believed that Barbarello's conduct was offensive until a year and a half after it stopped. The plaintiff claims that she was sexually harassed from May 1992 through early 1993 when Barbarello was overly friendly; sent her cards; sent her a toy; took her on a meaningless trip to Pennsylvania; made suggestions of a more intimate relationship; and was constantly around her. In addition, the plaintiff's Local Civil Rule 56.1 statement states that Barbarello frequently gave her unwanted neck and shoulder massages. Although Benincasa allowed Barbarello to do this, she claims that she felt intimidated and that she would otherwise lose her job. Similarly, Benincasa submits that although she did not originally complain of Barbarello sending her cards, a toy, and taking her to Pennsylvania, she did so because she was in fear of losing her job.

The Second Circuit's decision in *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir.1998) is instructive. There, Senior District Judge Jack B. Weinstein, sitting by designation, spoke for the Court of Appeals and stated as follows:

> Today, while gender relations in the workplace are rapidly evolving, and views of what is appropriate behavior are diverse and shifting, a jury made up of a cross-section of our heterogenous communities provides the appropriate institution for deciding whether borderline situations should be characterized as sexual harassment and retaliation.

> The factual issues in this case cannot be effectively settled by a decision of an Article III judge on summary judgement. Whatever the early life of a federal judge, she or he usually lives in a narrow segment of the enormously broad American socio-economic spectrum, generally lacking the current real-life experience required in interpreting subtle sexual dynamics of the workplace based on nuances, subtle perceptions, and implicit communications.

*Id.* (citing *United States ex rel. Toth v. Quarles*, 350 U.S. 11, 18, 76 S.Ct. 1, 100 L.Ed. 8 (1955)) ("Juries fairly chosen from different walks of life bring into the jury box a variety of different experiences, feelings, intuitions, and habits.") (other citations omitted). Judge Weinstein went on to conclude that "[a]n Article III judge is not a hierophant of social graces. Evaluation of ambiguous acts such as those revealed by the potential evidence in this case present an issue for the jury." *Gallagher*, 139 F.3d at 347.

■ In the Court's opinion, the defendants' arguments have some merit and may even prevail at the trial, or perhaps, even at the end of the plaintiff's case. However, viewing the evidence in the light most favorable to the plaintiff, the claim that Barbarello sexually harassed the plaintiff is inappropriate for resolution on a motion for summary judgment. As the Second Circuit articulately stated, "[i]n this period of rapidly changing and conflicting views of appropriate gender relationships in the workplace, decisions by a jury in debatable cases are sound in policy and consonant with the Seventh Amendment. The facts of this case illustrate the sharp differences in inferences that can be supported, depending upon the trier's hypotheses." *Gallagher*, 139 F.3d at 343. Benincasa should be afforded the opportunity to present her case to a jury. For purposes of this motion, it appears that an issue of fact exists as to Benincasa's subjective perception of the alleged abusive environment created by Barbarello.

If at the close of the plaintiff's case, the proof problems predicted by the defendants come to pass, they may move at that time for judgment as a matter of law under Fed.R.Civ.P. 50.

### C. Can NFS Be Held Vicariously Liable for the Conduct of Hernandez?

In *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) the Supreme Court directly dealt with the liability of an employer in a sexual harassment case and held:

> In order to accommodate the agency principles of vicarious liability for harm caused by misuse of supervisory authority, as well as Title VII's equally basic policies of encouraging forethought by employers and saving action by objecting employees, we adopt the following holding in this case and in *Faragher v. Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), also decided today. An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed.Rule Civ.Proc. 8(c). The

defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense. No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Id.* at 2271. In addition, the Court defined a "tangible employment action" as constituting a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2268.

The defendants claim that NFS cannot be held liable for Hernandez's alleged conduct because it never encouraged, condoned, or approved of the conduct. In addition, NFS asserts that it had a clear sexual harassment policy which Benincasa unreasonably failed to take advantage of. In view of *Ellerth* and *Faragher*, the defendants arguments are unpersuasive.

■ The Court notes that the plaintiff alleges that Hernandez was a supervisor and was "in charge." Furthermore, the plaintiff claims that "when one dealt with Hernandez an employee knew that he was dealing with high management who reported only to Barbarello" As such, a material issue of fact exists as to whether Hernandez was a supervisor and whether NFS can accordingly be held vicariously liable. In addition, the Court notes that while NFS asserts the affirmative defense outlined above in *Burlington*, Benincasa allegedly received a decrease in her salary before being constructively discharged. This allegation, if true, may amount to a "tangible employment action" that would prevent NFS from benefitting from the affirmative defense described in *Burlington*. Finally, the Court recognizes that while it is alleged by the defendants that Benincasa failed to take advantage of its sexual harassment policy, whether Benincasa was "unreasonable" in her actions is ultimately a jury question.

### D. *Did Benincasa Fail to Mitigate Damages*

The defendants argue that they are entitled to summary judgment on their mitigation of damages defense because Benincasa failed to exercise reasonable diligence to find suitable employment. While this alleged failure to mitigate may be pressed by the defendants at the trial, at this juncture there cannot be a determination, as a matter of law, to preclude the plaintiff from seeking back-pay.

### III. CONCLUSION

Having reviewed the parties' submissions, it is hereby

**ORDERED,** that on consent of the plaintiff the cause of action of assault and battery against NFS based on the acts of defendant Hernandez is **DISMISSED;** and it is further

**ORDERED,** that on consent of the plaintiff, the cause of action asserting a claim of assault and battery against defen-

dant Barbarello is **DISMISSED;** and it is further

**ORDERED,** that the remaining contentions in the defendants' summary judgment motion seeking dismissal of the plaintiff's complaint are all **DENIED;** and it is further

**ORDERED,** that as previously directed, the parties are to appear for trial on February 1, 2000 at 9:00 AM unless otherwise notified by the Court.

**SO ORDERED.**