**Kendall GLASS, Plaintiff,**

v.

**Manuel MAYAS, M.D., personally, Celia Wong, M.D., personally, J.L. Incapitand, M.D., personally, Anand Nadkarni, M.D., personally, Boris Dadic, M.D., personally, Rosalina Sarigumba, M.D., personally, Sontakh Singh Ohson, M.D., personally, and Dinesh K. Soon, M.D., personally, Defendants.**

**No. 90 CV 3342(TCP).**

United States District Court, E.D. New York.

May 16, 1992.

William M. Brooks, Mental Disability Law Clinic–Touro Law School, Huntington, N.Y., for plaintiff.

Robert K. Drinan, Asst. Atty. Gen., State of N.Y., Dept. of Law, Mineola, N.Y., for defendants.

PLATT, Chief Judge.

Defendants, individuals employed at the Nassau County Medical Center and by the New York State Office of Mental Health, have filed a motion to dismiss plaintiff's complaint or, in the alternative, for summary judgment. The parties were informed that the Court would treat the motion as one for summary judgment. For the following reasons, defendants' motion for summary judgment must be granted.

FACTS

This civil rights action evolved out of plaintiff's involuntary commitment to the Pilgrim Psychiatric Center ("Pilgrim") on June 30, 1989. Prior to this date, the Nassau County police had been summoned to the boarding house where plaintiff resided because an unknown individual alleged that plaintiff was threatening other individuals with a gun. Glass denied that he possessed a gun and after an investigation, the police were unable to find a gun. One week later, on June 30, 1989, the Nassau County police were again summoned to plaintiff's residence based upon another report that plaintiff was threatening a person with a gun. After the police arrived and investigated, they were again unable to find a gun, however, they witnessed plaintiff digging around trees and a cesspool cover. Dr. Manual Mayas and Cecil Wong, R.N., C.M.H.N., members of the Nassau County Medical Center Emergency Crisis Team, were with the police. Dr. Mayas and Ms. Wong observed and questioned plaintiff and Dr. Mayas then authorized plaintiff's transportation to the Nassau County Medical Center ("NCMC").

After plaintiff arrived at the NCMC, defendants Mayas and Wong examined plaintiff and finding plaintiff to be "hostile ... uncooperative and argumentative," they "recommend[ed] admission of [Glass] to a psychiatric hospital." Exhibit A to Affidavit of William Brooks submitted in Opposition to Defendants' Motion for Summary Judgment (hereinafter "Ex.—to Brooks Aff."). Plaintiff was then taken to Pilgrim where defendant Dr. Rosario Inciong [1] certified plaintiff for admission pursuant to New York Mental Hygiene Law ("NYMHL") § 9.39.[2] Dr. Inciong's finding

---

1. Dr. Inciong is incorrectly listed as "Dr. J.L. Incapitand" in the caption.

2. Section 9.39 governs emergency admissions to hospitals for immediate observation, care, and treatment of mentally ill individuals. A person may be retained for fifteen days if a "person [is] alleged to have a mental illness for which immediate observation, care and treatment in a hospital is appropriate and which is likely to result in serious harm to himself or to others."

N.Y.Mental Hyg.Law § 9.39(a) (McKinneys 1988). The term "likelihood to result in serious harm" means that a person would pose a "substantial risk of physical harm to himself ... or serious bodily harm or other conduct demonstrating that he is dangerous to himself" or a "substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm." Id. A person can only be admitted if a hospital

was based on the reports that plaintiff had allegedly threatened another individual with a gun, the behavior that the police observed on their second visit to his residence, and the fact that he was "very hostile and guarded." Ex. C to Brooks Aff. As required by section 9.39, within forty-eight hours, defendant Dr. Anand Nadkarni examined plaintiff and found that Glass exhibited a tendency to cause serious harm to others. *See* Ex. D to Brooks Aff. Dr. Nadkarni then confirmed the decision to involuntarily commit plaintiff.

On July 13, 1989, defendant Dr. Boris Dadic, plaintiff's treating physician, determined that plaintiff should be confined for further hospitalization pursuant to the terms of NYMHL § 9.27.[3] Defendant Dr. Rosalina Sarigumba confirmed this diagnosis and as required by NYMHL § 9.27, defendants Drs. Sontakh Singh Ohson and Dinesh Sood[4] examined plaintiff and certified that plaintiff required further hospitalization. *See* Exs. F and G to Brooks Aff. On July 19, 1989, pursuant to the terms of NYMHL § 9.31, plaintiff requested a hearing to challenge his confinement. A date was set for the hearing, but numerous adjournments took place and the hearing was never held.[5] Plaintiff was finally discharged from Pilgrim on September 29, 1989.

In October 1990, plaintiff instituted this action claiming that he was incorrectly diagnosed and that as a result of this incorrect diagnosis, he was improperly hospitalized and this improper confinement amounted to a violation of his rights under the Due Process Clause. Plaintiff also claimed that his rights under the Fourth Amendment were violated because the defendants lacked probable cause to admit and certify plaintiff pursuant to New York State's involuntary hospitalization criteria. Plaintiff also asserted State law causes of action for false arrest and for false imprisonment and sought compensatory and punitive damages. Defendants then moved for dismissal or, in the alternative, for summary judgment. When the parties appeared for oral argument, this Court gave plaintiff leave to file an amended complaint. In July, 1991, plaintiff filed an amended complaint that, in essence, contained the same allegations as plaintiff's original complaint. Defendants then filed the present motion seeking dismissal of the amended complaint or, in the alternative, summary judgment.

## DISCUSSION

A motion for summary judgment may only be granted where the moving party demonstrates that no genuine issue of material fact exists for trial and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The duty of a court confronted with such a motion is limited to determining whether the case presents issues of fact which require a trial for resolution; it may not properly resolve those issues itself in the context of the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct.

---

physician finds that the person qualifies under this section and this admission period cannot last for more than forty-eight hours unless the initial physician's finding is confirmed, after examination, by another physician. The section includes a notice provision and once a patient requests a court hearing "on the question of need for immediate observation, care, and treatment, a hearing shall be held ... as soon as practicable but in any event not more than five days after such request is received...." *Id.*

In 1983, the Second Circuit found that the New York Mental Hygiene Law "[met] the minimum facial requirements of due process—both substantive and procedural." *Project Release v. Prevost*, 722 F.2d 960, 971 (2d Cir.1983)

**3.** Section 9.27 provides for involuntary hospital admission for a period of up to sixty days after two physicians have examined the individual and certified that the individual "is mentally ill and in need of involuntary care and treatment in a hospital." N.Y.Mental Hyg.Law § 9.27(i) (McKinneys 1988).

**4.** Dr. Sood is incorrectly listed as "Dr. Soon" in the caption.

**5.** According to the affidavit submitted by John Stolfi, these adjournments were requested by the attorney, from the Mental Hygiene Legal Service, who was representing plaintiff and were based on the fact that plaintiff had requested a change in counsel. Affidavit of John Stolfi submitted in Support of Defendants' Motion for Summary Judgment, ¶¶ 5, 6 (hereinafter "Stolfi Aff.").

2505, 2509, 91 L.Ed.2d 202 (1986). In the course of its analysis, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *See Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991).

This case involves the issue of qualified immunity. In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court stated that qualified immunity shields a governmental official from liability in civil actions if the official's conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Furthermore, "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (citing *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738).

■ In essence, qualified immunity "is an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). Based on this principle, when the defense of qualified immunity is asserted, summary judgment is favored in order "to eliminate meritless actions against public officials at the earliest possible stage in the litigation." *Mozzochi v. Borden,* 959 F.2d 1174, 1177–78 (2d Cir.1992) (citing *Mitchell,* 472 U.S. at 530, 105 S.Ct. at 2817–18; *Harlow,* 457 U.S. at 816–18, 102 S.Ct. at 2737–38); *see Cartier v. Lussier,* 955 F.2d 841, 844 (2d Cir.1992). As the Court of Appeals for the Second Circuit recently stated, when a District Court is faced with a motion for summary judgment and the defense of qualified immunity is involved,

> a court should ask whether, viewing the evidence in the light most favorable to the non-moving party, the conduct that may be proved at trial is conduct that, at the time it occurred, violated a clearly

established constitutional or statutory right. If the answer is no, the court should grant a defendant's motion for summary judgment.

*Mozzochi,* 959 F.2d at 1178; *see also Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (where the defense of qualified immunity is involved, the initial inquiry should focus on whether plaintiff has alleged a violation of a clearly established constitutional right).

■ Defendants argue that they are entitled to summary judgment because if plaintiff's suit were allowed to proceed, then the federal courts would be entitled to review every alleged erroneous diagnosis that results in a procedurally proper involuntary commitment. Defendants assert that it is imperative that "doctors need not feel threatened that every signature on a certificate of commitment will lead to a civil rights lawsuit." *Plain v. Flicker,* 645 F.Supp. 898, 908–09 (D.N.J.1986). In defendants' view, it was objectively reasonable for them to believe that the examinations they conducted and their resulting diagnoses were permissible and lawful. Furthermore, defendants note that the incidents and examinations described in plaintiff's amended complaint provided a reasonable basis for deciding whether to commit plaintiff—the two occasions on which plaintiff was reported to be threatening others with a gun, the fact that plaintiff was digging around a tree and a cesspool cover when the police arrived at his residence and the fact that plaintiff was examined and diagnosed by a number of doctors. In defendants' view, they had an overwhelming and objectively reasonable basis for concluding that plaintiff was dangerous on June 30, 1989.

Plaintiff argues that summary judgment should not be granted because there is a question of fact as to whether or not defendants could have reasonably believed that plaintiff posed a danger to himself or others at the time he was involuntarily committed. Plaintiff argues that the extent to which an individual suffers from a mental illness is a question of fact. Plaintiff also argues that the submissions of both parties

demonstrate that a question of fact exists on the issues of whether plaintiff posed a danger to others and whether probable cause existed to believe that plaintiff satisfied the criteria for involuntary hospitalization. Finally, plaintiff argues that discovery is required because although defendants assert that plaintiff had a history of dangerous conduct, defendants' notes indicate that they did not rely upon plaintiff's history when deciding to commit plaintiff. In plaintiff's view, discovery should proceed to determine what factors defendants relied upon in reaching their decision to commit plaintiff.

In this case, the issue is whether it was objectively reasonable as a matter of law for the individuals who examined Glass to believe that their actions in examining and diagnosing Glass, authorizing his transportation and initiating an involuntary commitment proceeding were permissible and lawful. In other words, could defendants have reasonably believed, at the time they examined plaintiff, that plaintiff posed a danger to himself or others and thus, their decision to commit plaintiff did not violate his rights under the Due Process Clause. At the time that plaintiff was involuntarily hospitalized, it was clearly established that an allegedly mentally ill individual could not be confined unless that individual was found to pose a danger to himself or others. *Project Release*, 722 F.2d at 973. Plaintiff argues that defendants violated his constitutional rights because it was not objectively reasonable for defendants to find that he posed a danger to himself or others.

In spite of plaintiff's contentions, we find that it was objectively reasonable for defendants to believe that Glass posed a danger to himself or others. Dr. Mayas' and Ms. Wong's screening admission note states that Glass had a history of psychiatric hospitalizations.[6] *See* Ex. A to Brooks

Aff. The screening admission note also states: "[Glass] has a history of explosive behavior. Reports in his file indicate he has abused his mother. In September 1985, during a fight with his brother, he stabbed his brother three times, twice in the back and once in the chest." *Id.* Dr. Mayas also determined that based on plaintiff's "hostility and poor cooperation," psychiatric hospitalization was warranted. *Id.* Dr. Inciong noted plaintiff's prior psychiatric history and his prior history of violence. *See* Ex. B to Brooks Aff. Dr. Inciong also stated that Glass "expressed some persecutory ideation about another tenant." *Id.* Dr. Sood found plaintiff to be "suspicious, guarded, hostile and angry." Ex. F to Brooks Aff. Dr. Dadic also noted that "patient is a chronic schizophrenic.... [a]t present, he is still very guarded, suspicious and paranoid." Ex. E to Brooks Aff.

The numerous examinations of plaintiff reveal that plaintiff exhibited dangerous tendencies in the past and furthermore, there was an objectively reasonable basis to believe, at the time in question, that plaintiff posed a danger to himself or others. A review of the notes made by defendants at the time reveals sufficient evidence to support defendants' decision to commit plaintiff. Accordingly, defendants are shielded by the doctrine of qualified immunity and are entitled to summary judgment.

CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment must be granted.

SO ORDERED; submit, on notice, order of dismissal and judgment.

---

6. Plaintiff argues that this Court should disregard defendants' submissions regarding plaintiff's psychiatric history because this history was not relied upon by defendants when they determined that plaintiff should be involuntarily committed. This information, however, was relied upon by defendants at the time they examined plaintiff and determined that he should be

involuntarily committed. For example, Drs. Ohson, Sood and Sarigumba have submitted certificates that state that they were aware of plaintiff's prior psychiatric history as well as his family history. *See* Certificates submitted by Drs. Ohson, Sood and Sarigumba attached to Stolfi Aff.