**Watkins RICHARDSON, Plaintiff,**

v.

**NASSAU COUNTY MEDICAL CENTER, Dr. DelaRosa and Dr. Manetti, Defendants.**

**No. 92–CV–4386 (TCP).**

United States District Court,
E.D. New York.

Jan. 7, 1994.

220

Watkins Richardson, pro se.

James N. Gallagher, Deputy County Atty. of Nassau County, Mineola, NY, for defendants.

PLATT, Chief Judge.

Defendants have brought a motion to dismiss plaintiff's complaint or, in the alternative, a motion for summary judgment.[1] For the reasons which follow, defendants' motion for summary judgment must be granted.

BACKGROUND

This civil rights action emanates from the involuntary commitment of plaintiff to the psychiatric ward of Nassau County Medical Center on August 6, 1992 at approximately 3:30 A.M. Plaintiff came to Nassau County Medical Center on that date complaining of seizures and headaches caused by a brain tumor with which he said he had been diagnosed in 1988.[2] When found to be "delusional" and "potentially violent," (Defendant's Exhibit B), he was referred to defendant Dr. Josephine DelaRosa, a psychiatrist in the Emergency Room. Plaintiff told Dr. DelaRosa that he had to protect himself from people and carried knives to protect himself from "professional cons" and that two weeks prior, he had jumped someone to show that no one should fool with him. Dr. DelaRosa determined that Richardson was "psychotic, suffering from paranoia and delusions of grandeur", and "a danger to himself and others." Affidavit of DelaRosa at 2. Dr.

1. By letter dated October 26, 1993, the parties were notified by the Court that this motion would be treated as one for summary judgment and were given twenty days in which to submit additional supporting affidavits.

2. Richardson had been admitted to the psychiatric ward at Nassau County Medical Center at least two times prior to the August 1992 incident. In December, 1989, plaintiff was admitted to the psychiatric ward for two weeks "due to paranoid ideas of persecution." See Defendants' Exhibit A: Discharge Summary of December 29, 1989. Later, in April, 1991 he was admitted to the psychiatric ward for one month. At that time, he had a knife in his possession and found to be "paranoid, argumentative, hostile and threatening." See Defendants' Exhibit A: Discharge Summary of May 22, 1991.

DelaRosa then admitted plaintiff to "01," the closed psychiatric unit of the Nassau County Medical Center.

In this ward and later that day at 11:20 A.M., defendant Dr. Vincent Manetti performed a psychiatric exam of plaintiff. Dr. Manetti found the plaintiff to be "dangerous" and "delusional." Plaintiff was carrying knives "for his own protection" and delusional in thinking that there were people who were trying to steal his alleged personal injury claim against TransAmerica Corp. Affidavit of Manetti at 2. Dr. Manetti admitted Richardson to the psychiatric ward pursuant to § 9.39 of New York's Mental Hygiene Law,[3] and he was discharged on August 19, 1992, by order of the Supreme Court of the State of New York, Nassau County by Mr. Justice Joseph Goldstein. Manetti Affidavit at 2. On September 14, 1992, plaintiff brought this claim seeking compensation for the alleged violation of his civil rights. Defendants thereafter filed this motion for summary judgment.

DISCUSSION

A motion for summary judgment should be granted when the movant demonstrates that there are no triable issues of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The plaintiff does not dispute the basic facts raised by defendants in their papers. This case turns on whether the defendants benefit from the protection of qualified immunity.

■ Qualified immunity shields a government official from liability in a civil action if the official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Whether the government official can benefit from qualified immunity "turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987), quoting *Harlow*, 457 U.S. at 819, 818, 102 S.Ct. at 2739, 2738.

■ When faced with the issues of qualified immunity in the context of a summary judgment motion, the Second Circuit provides the following guideline:

a court should ask whether, viewing the evidence in the light most favorable to the non-moving party, the conduct that may be proved at trial is conduct that, at the time it occurred, violated a clearly established constitutional or statutory right. If the answer is no, the court should grant a defendant's motion for summary judgment.

*Mozzochi v. Borden*, 959 F.2d 1174, 1178 (2d Cir.1992). *See also Siegert v. Gilley*, 500 U.S. 226, ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

■ The issue in this present case therefore is whether it was objectively reasonable for the defendants, after examining Richardson, to authorize an involuntary commitment of him pursuant to N.Y.Men.Hyg. § 9.39. For if it was, those acts do not constitute a clear constitutional violation. This issue is reminiscent of one raised in *Glass v. Mayas*, 794 F.Supp. 470 (E.D.N.Y.1992), *aff'd*, 984 F.2d 55 (2d Cir.1993), a case previously before this Court. In that case, the plaintiff was diagnosed as posing a danger to himself and others and therefore was involuntarily hospitalized. "The numerous examinations of plaintiff reveal that plaintiff exhibited dangerous tendencies in the past and, furthermore, there was an objectively reasonable basis to believe, at the time in question, that plaintiff posed a danger to himself and others." *Glass v. Mayas*, 794 F.Supp. at 474. As a result, in that case, defendant's motion for summary judgment was granted.

The result in *Glass* dictates a similar conclusion in the present case. Plaintiff, Watkins Richardson, when examined by two different physicians on August 6, 1992, was carrying knives "for his own protection," (Affidavits of DelaRosa and Manetti), and found to be "delusional, paranoid and potentially

---

**3.** N.Y.Medical Hygiene Law § 9.39(a) states that a hospital may retain therein a patient for a "period of fifteen days" if that person is "alleged to have a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself and others." McKinneys, 1988.

violent," (Def.Exh. B: DelaRosa's Admission Notes), as well as "dangerous." (Manetti's Affidavit at 2.) It therefore was objectively reasonable for defendants to commit Richardson involuntarily for fifteen days pursuant to N.Y.Men.Hygiene Law § 9.39, on the ground that he posed a "danger to himself and others." These acts do not constitute a clear, constitutional violation. As a result, for essentially the same reasons and on essentially the same basis as we set forth in *Glass v. Mayas,* 794 F.Supp. 470 (E.D.N.Y. 1992), defendants' motion for summary judgment must be and the same hereby is granted.[4]

SO ORDERED.

---

**4.** Determination of the qualified immunity issue resolves defendants' motion and therefore the Court need not discuss defendants' additional arguments that Nassau County Medical Center may not be liable under respondeat superior for a § 1983 claim without a showing of personal responsibility, and that Plaintiff's allegations are too broad to support a constitutional violation. Defendant's argument appears to be based on *Duchesne v. Sugarman,* 566 F.2d 817 (2d Cir. 1987), a pre-*Monell* case, but nonetheless, *Monell* dictates the same result, albeit on a different basis.