**Kingsley MAWHIRT, Plaintiff,**

v.

**Ashraf Nabil AHMED, M.D., Marsha Tanenberg Karant, M.D., Yakov Greenstein, M.D., Horacio Preval, M.D., John Doe, M.D., John Roe, M.D., Police Officer Gonzalez, Police Officer Romagnoli, Robert Dye, Esq., Lea Irion, R.N. and Barbara Mawhirt, Defendants.**

**No. 96 CV 04773(ADS).**

United States District Court, E.D. New York.

Feb. 14, 2000.

Kingsley Mawhirt, Holtsville, NY, plaintiff pro se.

Eliot Spitzer, Attorney General for the State of New York, Mineola, NY by Robert K. Drinan, Assistant Attorney General, for the State defendants Ahmed, Karant, Greenstein, Preval, Doe, Roe, Dye and Irion.

Robert J. Cimino, Suffolk County Attorney, Hauppauge, NY by Arlene S. Zwilling, Assistant County Attorney, for the County defendants Gonzalez and Romagnoli.

Mental Disability Law Clinic Touro College, Huntington, NY (Matthew D. Semel, of counsel), for Amicus Curiae in support of the plaintiff pro se.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

On September 27, 1996 Kingsley Mawhirt ("Mawhirt" or the "plaintiff") commenced this action alleging violations of his procedural and substantive due process

rights as well as state law cause of action for false imprisonment and assault and battery in connection with two involuntary admissions to the University Hospital at Stony Brook ("UHSB") for psychiatric treatment.

Presently before the Court are: (1) the State defendants' motion to dismiss pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") seeking dismissal of all claims against Ahmed, Karant, Greenstein, Preval, Doe, Roe and Dye; (2) the State defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 seeking dismissal of the claims against the State defendants based on the doctrine of qualified immunity; (3) the State defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56 seeking dismissal of the claims against Nurse Irion based on the undisputed facts; and (4) the County defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). As all of the parties have attached various exhibits and affidavits to their motion papers and have been given the opportunity to present any other relevant material under Fed.R.Civ.P. 56, the Court will analyze the various motions in the context of a motion for summary judgment. *See In re G. & A. Books, Inc.,* 770 F.2d 288, 295 (2d Cir.1985) (holding that the district court may convert a motion to dismiss to a motion for summary judgment when all of the parties have been given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56); *see also Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991).

## I. BACKGROUND

The following factual allegations are taken from the plaintiff's first amended complaint and the Local Civil Rule 56.1 statements filed by the parties. On June 13, 1995, the plaintiff went to UHSB complaining of insomnia. The plaintiff was examined by Dr. Preval who described Mawhirt as "having paranoid delusions that FBI, CIA Mafia [are] after him and his family

... feels phones are bugged." Dr. Preval concluded that Mawhirt was psychotic and posed a substantial risk to himself and the community. As a result, the plaintiff was admitted to the psychiatric ward. A separate psychiatric assessment was made by Dr. Cieszkowski and progress notes were prepared recording the plaintiff's extreme paranoia. The progress notes indicated that the plaintiff had previously locked his family in their house.

The plaintiff claims that on June 14, 1995, he was harassed and physically forced by Nurse Irion and his wife, Barbara Mawhirt, to take an anti-psychotic drug called Trilafon. On June 16, 1995, the plaintiff was examined by Dr. Jafri who found that he was suffering from delusions, was very disorganized, anxious and "very paranoid." Dr. Jafri also found the plaintiff's insight and judgment to be poor. Dr. Jafri's report indicates that the plaintiff was fearful that he and his family were being watched and monitored by a camera. In addition, Dr. Jafri's report reveals that the plaintiff believed that he had received messages from the television and toys. Dr. Jafri concluded that the plaintiff showed a tendency to harm his family. Against his will, Mawhirt remained confined at UHSB from June 13, 1995 to June 19, 1995, when he was released.

On October 1, 1995, the plaintiff voluntarily went to the Suffolk County Police Department's Fifth Precinct located on Waverly Avenue in Patchogue, New York. The plaintiff alleges that his wife called the police and gave them false information, which led to Officers Gonzalez and Romagnoli to detain Mawhirt and take him to the UHSB psychiatric ward. The plaintiff contends that he was handcuffed and was not asked questions about his wife's allegations. Upon arrival at the UHSB, Officer Gonzalez completed a "Police Escort Information Form" which indicated that Mawhirt had a history of schizophrenia, was not taking his medication, was hearing voices and receiving messages through the television.

In addition, the plaintiff's wife provided a statement in support of an application for involuntary admission. The report disclosed that the plaintiff was verbally abusive, talked about "revenge" and that it was his turn to "beat" people. Mrs. Mawhirt also revealed that the plaintiff instructed her not to talk in the home about private things because the neighbors had installed video cameras in the home to spy on them. Also, Mrs. Mawhirt revealed that the plaintiff was under the belief that two helicopters were flying over their home in an effort to spy on them.

The plaintiff's complaint further states that on October 1, 1995 at 12:30 PM he was examined by Dr. Ahmed who diagnosed Mawhirt as a chronic paranoid schizophrenic with acute exacerbation. Dr. Karant, the attending psychiatrist, performed an examination confirming Dr. Ahmed's diagnosis. In addition, Dr. Greenstein concluded that Mawhirt was delusional and capable of unpredictable violence. Based upon Dr. Karant's conclusion that the plaintiff was "unpredictable" and a "substantial threat," he was certified for involuntary hospitalization.

On October 2, 1995, Mawhirt signed a request for a court hearing. On October 20, 1995 a hearing was held before Acting Supreme Court Justice Saverio J. Fierro. Mawhirt was represented by Robert Dye, Esq., a court appointed attorney. At the hearing, Dr. Ramos testified that he diagnosed Mawhirt as suffering from chronic paranoid schizophrenia and acute exacerbation. Dr. Ramos stated that "I found paranoid delusions and referential delusions as well. The patient would not speak, would not talk about the circumstances surrounding this admission for fear that somebody might be using that information against him." In fact, Dr. Ramos indicated that he overheard Mawhirt telling other staff members that he felt unsafe in certain portions of the hospital due to surveillance cameras that were monitoring his behavior. Dr. Ramos concluded that the plaintiff posed a risk to himself and to society. In addition, Dr. Ramos recommended that the plaintiff be required to take anti-psychotic medication.

The plaintiff also testified at the October 20, 1995 hearing as follows:

Q: Do you ever get any messages from the television set?
A: As far as I was concerned, I saw a blue screen message flash on the T.V.
Q: What did it say?
A: Kind of an insert.
Q: What did it say?
A: I'd have to, you know, think about it, but I saw a blue screen message flash.

\* \* \* \* \* \*

Q: Do you think you're under surveillance?
A: I think I've been under surveillance, yes.

At the conclusion of the evidence Justice Fierro found that the State had met its burden in demonstrating that the plaintiff required medication and confinement due to the diagnosis of paranoid schizophrenia and the substantial risk of physical harm that he posed to himself and to society.

The plaintiff's complaint asserts eleven causes of action. The first cause of action is brought pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that the plaintiff's right to procedural due process was denied when he was involuntarily confined on June 13, 1995 and October 1, 1995. The second cause of action asserts that under Section 1983, the plaintiff's substantive due process rights were violated by Officers Gonzalez and Romagnoli when they brought him to the UHSB. The third cause of action alleges that the defendants Ahmed, Karant, Greenstein and Preval violated his Section 1983 substantive due process right to liberty as a result of his involuntarily confinement. The fourth cause of action alleges that Officers Gonzalez and Romagnoli falsely imprisoned the plaintiff. The fifth cause of action asserts that defendants Karant and Greenstein

falsely imprisoned the plaintiff. The sixth cause of action is also a claim of false imprisonment, but against defendants Ahmed, Preval, Doe and Roe. The seventh cause of action alleging that the administration of the anti-psychotic drug Trilafon by defendants Ahmed, Preval, Doe, and Roe deprived the plaintiff of due process of law and thus violated Section 1983. The eighth cause of action is identical to the seventh cause of action, but is asserted against defendant Irion. The ninth cause of action alleges that defendants Irion and Mawhirt committed assault and battery by forcing the plaintiff to take Trilafon. The tenth cause of action, asserts that defendants Ahmed, Preval, Karant, Greenstein, Doe, and Roe subjected the plaintiff to treatment decisions that departed from minimally accepted professional judgment and thus deprived him of due process of law and further violated Section 1983. Finally, the eleventh cause of action alleges a Section 1983 claim that defendant Dye deprived the plaintiff of effective assistance of counsel thereby violating the Fourteenth Amendment

## II. DISCUSSION

### A. *Standards of Review*

#### 1. **Self Representation**

In addressing the defendants' motions, the Court is mindful that the plaintiff is proceeding *pro se* and that his submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 [1972]); *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir.1998) (citations omitted). The Court recognizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit his rights by virtue of his lack of legal training. *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983). However, the Court is also aware that being a *pro se* plaintiff "does not exempt a party

from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Birl v. Estelle*, 660 F.2d 592, 593 [5th Cir.1981]).

#### 2. **Fed.R.Civ.P. 56**

A court may grant summary judgment "only if the pleadings and evidentiary submissions demonstrate the absence of any genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Tasini v. New York Times Co.*, 192 F.3d 356, 360 (2d Cir.1999); *see also Hunt v. Cromartie*, 526 U.S. 541, 119 S.Ct. 1545, 1550, 143 L.Ed.2d 731 (1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 [1986]; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 [1986]); *Turner v. General Motors Acceptance Corp.*, 180 F.3d 451, 453 [2d Cir.1999]; (Fed.R.Civ.P. 56[c]). In this determination, the Court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998); *Twin Lab., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990); *Tasini*, 192 F.3d at 360.

According to the Second Circuit, "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Fagan v. New York State Elec. & Gas Corp.*, 186 F.3d 127, 132 (2d Cir.1999); *West–Fair Elec. Contractors v. Aetna Cas. & Surety Co.*, 78 F.3d 61, 63 (2d Cir.1996); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56[e]). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the

nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505.

If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 129 (2d Cir.1996), *cert. denied*, 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991); *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 100 (2d Cir.1998). However, mere conclusory allegations, speculation, or conjecture will not avail a party resisting summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir.1996). Finally, the Court is charged with the function of "issue finding," not "issue resolution." *Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2d Cir.1994).

It is within this framework that the Court addresses the present motions to dismiss and for summary judgment.

## B. *Section 1983*

 42 U.S.C. Section 1983 provides, in relevant part, that "[e]very person who, under color of [state law] subjects, or causes to be subjected, any ... person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law [or a] suit [in] equity." A violation is proven when "a person acting under color of state law deprived a plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *McDarby v. Dinkins*, 907 F.2d 1334, 1336 (2d Cir.1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 [1981]). Thus, a Section 1983 claim has two elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of his or her rights or privileges secured by the Constitution and laws. *See Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir.1998); *Eagleston v. Guido*, 41 F.3d 865, 872 (2d Cir.1994).

In order to satisfy the first requirement of acting under color of state law, the Second Circuit has required that the defendant exercise power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir.1996) (quoting *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 [1988]).

The second requirement, that the plaintiff suffer a deprivation of his rights or privileges secured by the Constitution, requires that the plaintiff specifically allege a violation of the Constitution or an Act of Congress. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 618, 99 S.Ct. 1905, 1916, 60 L.Ed.2d 508 (1979).

### 1. **Procedural Due Process**

 There can be no dispute that an involuntary civil commitment is a "massive curtailment of liberty," *Vitek v. Jones*, 445 U.S. 480, 491, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980), and must therefore be accomplished in accordance with procedural due process. *Project Release v. Prevost*, 722 F.2d 960, 971 (2d Cir.1983). The Second Circuit stated in *Rodriguez v. City of New York*, 72 F.3d 1051, 1062 (2d Cir.1995) that "due process does not require a guarantee that a physician's assessment of the likelihood of serious harm be correct, ... [it only requires] that the decision to order an involuntary emergency commitment be made in accordance with a standard that promises some reasonable degree of accuracy." *Id.*

 While the plaintiff disputes the conclusions reached by the defendant doctors that he posed a substantial risk of serious harm to himself and his family, there is no allegation in the plaintiff's first amended complaint that the defendants failed to comply with the New York State Mental Hygiene Law which has been held

by the Second Circuit as facially constitutional. *See Project Release v. Prevost,* 722 F.2d 960, 971 (2d Cir.1983). With regard to the June 13, 1995 admission, the plaintiff was examined by three doctors who concluded that he required involuntary confinement. Similarly, with regard to the October 1, 1995 admission, the plaintiff was examined by four doctors who all concluded that he should be involuntarily confined. Moreover, after Mawhirt requested a court hearing, Justice Fierro confirmed the diagnosis of paranoid schizophrenia and that Mawhirt posed a substantial risk of physical harm to himself and society. Accordingly, while the plaintiff disputes the conclusions reached by the doctors, as a matter of law, there are no genuine issues of material fact with regard to whether Mawhirt was afforded procedural due process as he received all the process that was due to him under the New York State Mental Hygiene Law. As such, the Court grants the motions dismissing the first cause of action as it relates to the defendant doctors as well as the tenth cause of action.

■ The claim that Officers Gonzalez and Romagnoli violated the plaintiff's procedural due process rights when they transported to the UHSB on October 1, 1995 is also without merit. New York Mental Hygiene Law § 9.41 states that:

Any . . . police officer . . . may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others. Such officer may direct the removal of such person or remove him or her to any hospital specified in . . . section 9.39 or any comprehensive psychiatric emergency program. . . .

As such, Mawhirt cannot claim that his procedural due process rights were violated as the statute does not provide any specific procedure or hearing prior to being transported to a hospital or psychiatric emergency program. In other words, according to the New York Mental Hygiene Law, the plaintiff was not entitled to any process before being transferred to the UHSB. Accordingly, the Court dismisses the first cause of action as it relates to any claim that Officers Gonzalez and Romagnoli violated the plaintiff's right to procedural due process.

**2. Substantive Due Process and Qualified Immunity**

Without deciding whether substantive due process prohibits the confinement of a nondangerous individual, the Court is of the view that in this particular case, qualified immunity shields the state defendants that are accused of violating the plaintiff's substantive due process rights.

■ The issue of qualified immunity is one that should be decided upon a motion for summary judgment, and before discovery, whenever possible. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In *Weaver v. Brenner,* 40 F.3d 527 (2d Cir.1994), the Second Circuit stated that:

The goal of § 1983 is to deter public officials from violating citizens' federal rights and to compensate victims of such official wrongdoing. The doctrine of qualified immunity weighs this important interest in citizens' civil rights against the policies of encouraging qualified persons to accept public positions and ensuring that public officials vigorously discharge their duties. The balance struck under the doctrine of qualified immunity has been formulated as a rule: public officials are immune from § 1983 civil rights suits brought by an aggrieved citizen when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). It is not necessary that the questioned action have been previously held unlawful for the official to be held liable; rather, it is enough if the unlaw-

fulness is apparent in light of pre-existing law. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).... Further, even when the right in question was clearly established at the time of the alleged unlawful conduct, an official is still entitled to immunity were it objectively reasonable for him to believe the conduct lawful. *See O'Neill v. Babylon*, 986 F.2d 646, 649 (2d Cir.1993).

*Id.* at 532–33.

■ Government actors who perform discretionary functions are protected from liability for civil damages where their conduct does not violate a clearly established constitutional right of which a reasonable person would have known. *Doe v. Marsh*, 105 F.3d 106, 109 (2d Cir.1997); *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir.1996); *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).

■ Even where the plaintiff's rights and the scope of the officials' permissible conduct are clearly established, the qualified immunity defense protects a governmental actor if it was "objectively reasonable" for the actor to believe that his actions were lawful at the time of the alleged unlawful conduct. *Marsh*, 105 F.3d at 109–10; *Lennon*, 66 F.3d at 420.

■ The facts surrounding and leading to the plaintiff's involuntary confinements warrant a finding that the defendants' actions were objectively reasonable. When the plaintiff went to the UHSB on June 13, 1995 complaining of insomnia, Dr. Preval noted that the plaintiff was having paranoid delusions that the FBI, CIA and Mafia were after him and his family. In addition, Dr. Preval revealed that the plaintiff believed that his phones were bugged. Furthermore, a separate psychiatric assessment was made by Dr. Cieszkowski and recorded the plaintiff's extreme paranoia. Dr. Cieszkowski also indicated that the plaintiff had locked his family in the house. In addition to the reports of Drs. Preval and Cieszkowski,

after examining the plaintiff, Dr. Jafri reported that the plaintiff was fearful that he and his family were being watched and monitored by a camera. Dr. Jafri also report revealed that the plaintiff believed that he had received messages from the television and toys.

With regard to the October, 1995 involuntary confinement, the defendant doctors were informed by Officer Gonzalez that Mawhirt had a history of schizophrenia; was not taking his medication; was hearing voices and receiving messages through the television. In addition, the plaintiff's wife indicated that Mawhirt was verbally abusive; talked about "revenge;" instructed her not to talk in the home about private things because the neighbors had installed video cameras in the home to spy on them; and was under the belief that two helicopters were flying over their home in an effort to spy on them. As previously stated, Dr. Ahmed diagnosed Mawhirt as chronic paranoid schizophrenic with acute exacerbation. Dr. Karant confirmed this diagnosis and concluded that Mawhirt was "unpredictable" and a "substantial threat" to the community. In addition, Dr. Greenstein concluded that Mawhirt was delusional and capable of unpredictable violence.

As stated above, these findings were confirmed on October 20, 1995 by Justice Fierro. At the hearing, Dr. Ramos testified that he overheard Mawhirt telling other staff members that he felt unsafe in certain portions of the hospital due to some kind of surveillance cameras that were monitoring his behavior. Dr. Ramos concluded that the plaintiff posed a risk to himself and society if he were to be released and that the plaintiff should be required to take medication. In addition, Mawhirt's own testimony confirmed that he was receiving messages from the television and that he believed that he was under surveillance.

The substantive due process component of the plaintiff's first amended complaint is based on his belief that he was mistakenly

diagnosed as being dangerous and should therefore not have been involuntarily confined. While the plaintiff repeats his belief that he was not dangerous in his approximate 114 pages of motion papers, the plaintiff has not offered any medical evidence or other expert testimony to rebut the findings of the defendant doctors who concluded that Mawhirt was a substantial danger to himself and to his family.

As such, the Court finds that, under the clear legal precedent in this Circuit, the defendant doctors actions were objectively reasonable and are entitled to qualified immunity as a matter of law. *See e.g.,* *Glass v. Mayas,* 984 F.2d 55, 57 (2d Cir. 1993) ("we agree with Judge Platt that the defendants' actions were objectively reasonable. Glass was hospitalized following two reports that he was threatening an individual with a gun and observations of strange behavior. Furthermore, his demeanor was variously described by those who examined him as hostile, guarded, angry, suspicious, uncooperative, and paranoid."); *Katzman v. Khan,* 67 F.Supp.2d 103, 110 (E.D.N.Y.1999) (holding that because the undisputed facts "show that both the state and city defendant doctors acted in an objectively reasonable manner in finding plaintiff to be a danger to others ... they are qualifiedly immune from liability under Section 1983."); *Demarco v. Sadiker,* 897 F.Supp. 693 (E.D.N.Y.1995), *rev'd on other grounds,* 1999 WL 1024696, 199 F.3d 1321 (2d Cir.1999) (holding that despite the fact the plaintiff submitted expert testimony from a doctor who concluded that it was not objectively reasonable for the plaintiff to be involuntarily confined, the defendants were entitled to qualified immunity); *Richardson v. Nassau County Medical Center,* 840 F.Supp. 219 (E.D.N.Y.1994) ("holding that it was objectively reasonable to involuntarily confine the plaintiff due to the findings of two different physicians that the plaintiff was carrying knives for his own protection and was delusional and paranoid."); *dePoel v. City of New York,* 772 F.Supp. 106, 108 (E.D.N.Y.1991) ("[plaintiff's] claim that the

doctors did not make the requisite findings is inconsistent with their reports. There is no suggestion that the doctors maliciously or in bad faith declined to follow the statutory procedure.") Accordingly, the Court grants the defendants' motion and dismisses the plaintiff's third cause of action.

 Further, the Court finds that any substantive due process claim, procedural due process claim, or claim of assault and battery against any of the defendant doctors or Nurse Irion for administering antipsychotic medication is also precluded by the doctrine of qualified immunity. *See* *Kulak v. City of New York,* 88 F.3d 63, 75 (2d Cir.1996) (holding that "[a]s the Supreme Court has instructed, a doctor will not be liable under § 1983 for the treatment decisions she makes unless the decisions are such a substantial departure from accepted judgment, practice, or standards as to demonstrate that she actually did not base the decisions on such a judgment.") The plaintiff has not offered any evidence that any of the medical defendants departed from accepted judgment, practice or standards. As such, the Court grants the defendants' motion and dismisses the seventh, eight, and ninth causes of action alleging that the plaintiff was given improper medication while at the UHSB.

 Finally, the Court finds that the plaintiff does not have a viable claim that Officers Gonzalez and Romagnoli violated his substantive due process rights when he was transported to UHSB on October 1, 1995. Where a particular amendment provides an explicit textual source of constitutional protection against a specific government behavior, "that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claim." *Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Thus any claim against the Officers would not be a claim of substantive due process, but a claim that the Officer's violated the Fourth Amendment. *See Glass v. Mayas,* 984

F.2d 55, 58 (2d Cir.1993) (holding that when the Crisis Team took the plaintiff to the hospital against his will, the Fourth Amendment was applicable.) Even if the Court were to construe the plaintiff's first amended complaint as setting forth a Section 1983 Fourth Amendment claim, the Court is of the view that the officers acted reasonably and violated no clearly established rights when they brought Mawhirt to the UHSB and would thus be entitled to qualified immunity, as a matter of law. Therefore, the Court grants the defendants' motion to dismiss the second cause of action.

### C. *False Imprisonment*

The claims asserting that the defendant doctors falsely imprisoned the plaintiff are barred by the doctrine of qualified immunity for the reasons set-forth above. The defendant doctors were objectively reasonable when they confined the plaintiff at the UHSB due to their objectively reasonable conclusion that he was a substantial risk to himself and the community. As such, the fifth and sixth causes of action asserting that the defendant doctors falsely imprisoned the plaintiff are dismissed.

 With regard to the plaintiff's state law claim that Officers Gonzalez and Romagnoli falsely imprisoned the plaintiff on October 1, 1995 when they brought him to the UHSB, the Court notes that to date, the plaintiff has not filed a notice of claim pursuant to General Municipal Law § 50–m. Therefore, the fourth cause of action against Officers Gonzalez and Romagnoli must be dismissed. *See Wrenn v. New York City Health & Hospitals Corp.*, 104 F.R.D. 553 (S.D.N.Y.1985).

### D. *Ineffective Assistance of Counsel*

 The plaintiff also claims that he received ineffective assistance of counsel at the October 20, 1995 hearing. The Court notes that "it is well-established that court appointed attorneys performing a lawyer's traditional functions as counsel ... do not act under color of state law and therefore are not subject to suit under 42 U.S.C. § 1983." *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir.1997); *see also Parratt v. Taylor*, 451 U.S. 527, 536, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In addition, the Court has reviewed the minutes of the October 20, 1995 hearing and finds that Dye provided the plaintiff with adequate counsel, as a matter of law. Therefore, the Court grants the defendant's motion to dismiss the eleventh cause of action asserting a Section 1983 claim against Dye on the ground that he provided ineffective assistance of counsel.

### E. *Barbara Mawhirt*

 The exercise of supplemental jurisdiction by a federal court over a state law claim is governed by 28 U.S.C. § 1367 which provides, in relevant part, that "[t]he district court may decline to exercise supplemental jurisdiction over a claim ... [if] the district court has dismissed all claims over which it has original jurisdiction" (28 U.S.C. § 1367[c][3] ). According to Second Circuit law, in a case addressing the discretionary exercise of supplemental jurisdiction, " 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims' " (*Travelers Ins. Co. v. Keeling*, 996 F.2d 1485, 1490 [2d Cir.1993] [*quoting Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ]; *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 [1966] [discussing pendent jurisdiction]; *Morse v. University of Vermont*, 973 F.2d 122, 127 [2d Cir.1992] [same] ).

As the Court has dismissed all the federal Section 1983 causes of action and as the case is not near the trial stage, the Court declines to retain jurisdiction over the one cause of action asserted against Barbara Mawhirt alleging that she committed assault and battery by forcing the plaintiff to take an anti-psychotic drug.

Accordingly, *sua sponte,* the Court dismisses the ninth cause of action as it pertains to Barbara Mawhirt.

### III. CONCLUSION

Having reviewed the parties' submissions, it is hereby

**ORDERED,** that the defendants' motions to dismiss and for summary judgment seeking dismissal of the complaint are all **GRANTED** and the plaintiff's complaint is dismissed in its entirety; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case. **SO ORDERED.**